[File No. Cr. 88.]

STATE OF NORTH DAKOTA, Respondent, v. BILL PARKER, Appellant.

(241 N. W. 299.)

786

*Lashkowitz & Smith,* for appellant.

*Frank I. Temple,* State's Attorney, and *Ralph F. Croal,* Assistant State's Attorney, for respondent.

BURKE, J. This is an appeal from the county court of Cass County from a judgment of conviction of the crime of engaging in the liquor traffic.

It is the contention of appellant that the court erred in overruling defendant's objections to the following procedure in said Court during the examination of the jurors on the voir dire, viz.:

"Mr. Croal: Mr. Ray, do you know the defendant, Bill Parker?

"Mr. Ray: I do not.

"Mr. Croal: By the way, is Mr. Parker in the courtroom?

"Mr. Lashkowitz: May the record show that we object to this last question as wholly improper, prejudicial, upon the further ground and for the further reason that the State's comment on the apparent absence of a defendant in a criminal action is prejudicial and unwarranted and improper."

During the argument to the jury on the facts, the following proceedings were had:

"Mr. Lashkowitz: I think we can both now remember the statement made a moment or so ago. It was stated to the jury that no juror had any opportunity to see Mr. Parker. I think this is in the nature of commenting on the defendant's failure to testify and his absence in this trial, which I object to as prejudicial and in violation of the law of the State of North Dakota.

"Mr. Croal: Counsel in his argument made the direct statement it was not required that the defendant testify and I am not commenting on that I am commenting on his failure to be present in court.

"Mr. Lashkowitz: I object to the repetition of that statement as additional prejudice and contrary to the laws of the State of North Dakota."

Mr. Croal's question when the jurors were being examined, namely: "Mr. Ray, do you know the defendant, Bill Parker?" was a perfectly legitimate question to ask of a juror in testing his qualifications as a juror and could in no way be prejudicial to the defendant, and if the defendant was not in his accustomed place, it was perfectly natural for Mr. Croal to ask the question: "By the way, is Mr. Parker in the courtroom?" He said nothing about the defendant's absence, he asked if defendant was in the courtroom and defendant's counsel objects and is first in mentioning the defendant's absence.

The only statement made by Mr. Croal in his argument to the jury, complained of, is "that no juror had an opportunity to see Mr. Parker." It is claimed that this statement is equivalent to commenting on the defendant's failure to testify. It does not appear in the record that Mr. Croal said anything about the absence of the defendant that reflected on him; he simply made the statement that no juror had an opportunity to see Mr. Parker. If they had had an opportunity to see him, he might have made a very favorable impression, or it might be the reverse. It was quite apparent to the jury that the defendant was not present, and his absence was made equally clear by the objections and arguments of counsel for the defendant.

Appellant contends that it was error to receive in evidence the state's exhibits "A, B and C;" "A" was a gallon tin of alcohol containing 95% of alcohol by volume; "B" was a bottle, taken from the person of the defendant, and shown to contain 95% of alcohol by volume; "C" was an empty bottle taken from the person of the defendant at the same time that "B" was taken. Sometime after twelve o'clock at night officers Anderson and Holte, while driving near the rear of Mr. Mattson's restaurant in the city of Fargo, saw a Ford car turn into the alley off 5th street going east towards 4th street; they followed this car and were about forty feet behind it when it turned in to a garage. Anderson jumped out and ran into the garage and found the car with the door open and the motor hot. Nobody was in the car at that time. The driver evidently departed so suddenly that he did not have time

to shut the door; no one went out the entrance door of the garage, but there was a small house door on the side of the garage opening into a blind alley. Anderson went out and saw defendant standing near the house, which forms a part of the blind alley. As he was approaching, the defendant struck at him, but Holte came and they arrested him and took from his person the bottle of alcohol, exhibit "B," and the empty bottle, exhibit "C." He stated that he came from Breckenridge and the Ford car which they followed into the garage was loaded with intoxicating liquor and had a Minnesota license. There were 140 gallons of alcohol in the car. One gallon tin of the alcohol was analyzed and introduced in evidence as exhibit "A." The alcohol in the bottle, exhibit "B" that was taken from the person of the defendant, contained the same per cent of alcohol by volume as the gallon can, taken from the automobile, contained. The defendant was seen and arrested only a few feet from the garage and almost immediately after the car was driven in. It was very late at night and no one else was apparently in sight.

There was sufficient foundation for the admission of the exhibits and sufficient evidence to sustain the verdict of the jury.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.